Mr. Richter, would you hold up Mr. Richter? Thank you, Your Honor. Good morning, Your Honors, and may it please the Court, my name is Matt Richter, I represent Plaintiff Appellant Sherita Deloney in this case. And the primary issue in this case is that the ALJ failed to even mention the outcome determinative testimony of his agency's own medical expert in implicitly concluding plaintiff's knee impairments were not medically equivalent to the listing of presumptive disability 102A. Here, the ALJ did not even mention the possibility of medical equivalence, let alone provide a more than perfunctory analysis of whether Ms. Deloney's combined impairments were or were not medically equivalent to the listing. His failure to even mention, let alone resolve the contradictory testimony from his own agency's medical expert within his decision does not provide a reviewing body the requisite logical and accurate bridge from the evidence of no medical equivalence to listing 102A. Dr. Gilliloir's testimony was plainly contradictory on the one hand, and on the other, it's indicative of his simply missing the fact that appellant exhibited the final criteria he ultimately testified to the ALJ that would, he indicated, would medically, would indicate medical equivalence. That was flexion contracture, or in other words, extension equal to or more than 15 degrees short of full extension of the knee. This testimony was outcome determinative to appellant's case, and the ALJ simply brushed it aside and ignored the fact appellant exhibited the very criteria his own agency's testifying expert opined was required to medically equal the listing. The ALJ's decision does not even mention this clinical evidence. Additionally, Dr. Gilliloir appeared to testify previously that appellant's combined impairments were medically equivalent to the listing due to insufficient flexion, or the ability to bend the knee. Now, it's a little confusing. Flexion and flexion contracture are actually two opposite things. Flexion is insufficient bending of the knee, and flexion contracture is an inability to straighten the knee. Dr. Gilliloir had testified that, or indicated through his testimony that either of these would indicate a person's inability to effectively ambulate, thus causing her to equal the listing. The ALJ's decision did not confront either of these avenues to appellants equaling the listing or any of the corresponding evidence which supported such a conclusion. Well, the ALJ is not required, as we've made clear in the briefs, to confront every single item of evidence. Dr. Gilliloir's testimony is the entire case here. It's the single most important piece of evidence in the entire record. It's the whole ballgame. Director, this was a video hearing, correct? Your Honor, I didn't represent Ms. Deloney at the ALJ's. The ALJ's opinion reflects there was a video hearing. Okay. And the transcript, the excerpts of some of Dr. Gilliloir's testimony are at least ambiguous in my mind. Part of it's just the way people ask questions on the spur of the moment, and they build in negatives, and a no answer is ambiguous. But my impression was that Ms. Deloney's counsel didn't apparently make much of this, of Gilliloir's testimony, and that apparently everybody who was in the video conference thought it was pretty clear what he was saying, namely that she didn't meet or equal 1.02a. Did the ALJ have to do more? And if so, why? Well, the final criteria that Dr. Gilliloir gave was to equal the listing, you would need a flexure contracture that was equal to or more than 15 degrees. And he ultimately testified that no, that wasn't in the record. But unfortunately, his testimony was inaccurate. He missed two instances where flexion contracture was limited at 15 degrees. And where do we find those? And did Clayman's counsel say anything about that? Those would be at administrative record 370 and 373. The difficulty there, Your Honor, is after Dr. Gilliloir gave that testimony, plaintiff's counsel was not given the opportunity to cross-examine him at that point. Did he speak up? Did he ask for it? He didn't, Your Honor, but the ALJ moved the hearing along directly to the vocational expert. And just as, from my experience, you know, doing these cases for an administrative law judge, what generally happens is that the medical expert is excused from the call or the video once the judge goes to, is done with his testimony and moves on to the next expert. Did you have the opportunity to supplement the record afterwards? To identify these two places you claim reflect that? Well, Your Honor, as I said, I did not, I did not represent the, I didn't represent the claimant. Would you agree that the lawyer would have had the opportunity to subsequently supplement the record? He could have directed the ALJ's attention to the, to the evidence that's in the record. There wouldn't have necessarily been a need to supplement it. But again, I mean, the ALJ is responsible for, for considering the relevant evidence and the evidence that's most important. He does have the burden of, of constructing a logical and accurate bridge between the evidence and his conclusions. And here, the most relevant- But Stallone would have the burden of proving the disability at step three, which is what we're talking about. She would have the burden of proving her disability, but she, I would argue that so in applying the evidence that demonstrated the very criteria that, that Dr. Gilloir said was necessary to, to, to equal the listing. And then, of course, you also have the issue that, so Dr. Gilloir is called to review the record in its entirety and give testimony. And if the judge is wholly relying on Dr. Gilloir's testimony that there's no medical equivalence, even though there's evidence which contradicts that, it would seem that that reliance on, on, on uninformed testimony would fail to support with substantial evidence his conclusion with regard to, to 102A. And in addition to that, this court's continually found that the ALJ has a responsibility to give a more than perfunctory analysis of, of his, his conclusion with regard to the listing. And that simply didn't happen here because the ALJ didn't even mention the notion of medical equivalence to, to 102A. But I see I, I've reached my time here. I'm going to reserve the rest for rebuttal. Thank you. Thank you, Mr. Richter. Mr. Mervis. Good morning and may it please the court and, and my name is David Mervis on behalf of the commissioner and my apologies for the technical difficulties at the outset. There are two issues that have been briefed in this case, but as we've been discussing, as, as counsel has been discussing the listing issue, the medical equivalence issue, I'll, I'll focus on that in my presentation. Although I'm certainly happy to answer questions about the, the 2017 letter opinion that was also briefed. But as to the question of medical equivalence, what I'd, I'd like to do is, is just note just briefly as, as your, your honors have noted, this is a step of the ALJ's evaluation where Ms. Deloney bears the burden of proof. And it's also important to note what, why we're having this discussion about Dr. Gilloir in the first place. And I think the issue, the answer to that question is because the ALJ was, was appropriately, I think, paying attention to this issue. So in a pre-hearing brief before the ALJ's, before the hearing, the administrative hearing, Ms. Deloney's prior counsel noted the, the question of, of whether listing 1.02 is met. And so the ALJ brought a medical expert to the hearing and asked Dr. Gilloir to testify. So, so that's, I think, one sort of background consideration here is, is why this testimony is here in the first place. And then at the hearing, what Dr. Gilloir tells the ALJ is exactly what he's looking for to, in response to the ALJ's question. So the, the ALJ asks him, does Ms. Deloney meet or equal a listing? And Dr. Gilloir says several times, unambiguously, no, the answer is no. And the reason for that is I'm looking for evidence, clinical findings of, of flexion contracture. And as counsel indicated that, that's an inability to, to, to fully straighten the leg. And that's a, that's a defined term by, by, for Dr. Gilloir. So I'm looking for evidence of flexion contracture or ineffective ambulation. So he tells the ALJ, and this is administrative 50, record 52, I don't find that in the record. The, this is extremely important. Those are Dr. Gilloir's words. Because I am not finding evidence that the Ms. Deloney can, is unable to ambulate, I cannot state that she meets or equals listing 1.02a. This is at administrative record 52. The, Dr. Gilloir, in response to questions from Ms. Deloney's counsel, then indicates again, that I do not have evidence that would satisfy my criteria. And again, what, well, let's, you know, again, taking a step back, the listings as, as a step in the sequential evaluation where Ms. Deloney bears the burden, it's a screening device. It's, these are criteria that are listed in the commissioner's regulations. They are so severe that they prevent all gainful activity. So Ms. Deloney bore the burden of proving that she either met or medically equals all of the criteria that the Supreme Court has made clear in Sullivan v. Zebley. And the regulations at 404.15.26 do the same. The requirement here is, is stringent. Now, the ALJ in this case, confirms with Dr. Gilloir, he says, to be clear, you're saying it doesn't do that. And the that in that sentence is meet the doctor's definition of what flexion contracture is. And Dr. Gilloir confirms that. So Dr. Gilloir is one medical expert who testifies expressly that Ms. Deloney doesn't meet this strict requirement. Two other doctors in the record, Dr. Fife and Dr. Brill, both completed medical evaluations of the record and came to the same conclusion. So the ALJ is left with three opinions that Ms. Deloney didn't meet the medical requirement of listing 1.02a. And what the ALJ does with this evidence, I think, is a little different from how counsel indicated. At step three, so I'm looking at page 18 of the administrative record, the ALJ introduces the topic of medical equivalence and says that the evidence doesn't support a finding that medical equivalence is met here. It mentions specifically 1.02. And again, that's because Dr. Gilloir testified to it, because Ms. Deloney's counsel had indicated that that was relevant. And then, of course, that it's implicated by the evidence here. And then the ALJ makes specific findings and says that the criteria here, in this case, do not meet the criteria of listing 1.02. So the ALJ explains that there is no evidence of ineffective emulation. There's no evidence of gross anatomical deformity. And that includes this contracture that we've been discussing. And that is just like Dr. Gilloir testified. So I don't think it's quite right to say that the ALJ brushed this issue aside. The ALJ's decision reflects his consideration of it. And more to the point, reflects how the ALJ reached the conclusion in basing that on the testimony of Dr. Gilloir. So there's this separate issue here of whether Dr. Gilloir's testimony was somehow confusing or contradictory. As we set out in the brief, Dr. Gilloir doesn't testify that insufficient flexion, which would be bending of the knee, would meet the listing. This is, it's there for the court to read in both our briefs and the record at 54. But what Dr. Gilloir testifies to is that there is a measurement, a flexion contracture measurement that he's looking for. And he doesn't find that. And what he says is that it's equal to more than 15 degrees. And counsel has keyed on that and reads that as equal to or more. But the fact is that the record, the transcript is what it is. And what Dr. Gilloir asks for, looks for, is looking for is not present in the record. There is not evidence of flexion contracture, this inability to straighten the leg with a measurement of more than 15 degrees. And that's what Dr. Gilloir has testified that he's looking for. And again, the ALJ is quite insistent, making sure that that is what, in fact, Dr. Gilloir is testifying to. Again, this is a technical issue. This is a complex issue. So the ALJ quite reasonably asked the medical expert in no uncertain terms, what did you just say? And then the ALJ, excuse me, Dr. Gilloir confirms what he is telling the ALJ. And then again, at the close of the hearing, what, at the close of this section anyway, but you're saying it doesn't do that. Administrative 54, record 54. That's the ALJ confirming once again with. Mr. Mervis, are you telling us then that this case depends on the difference between 15 degrees and 16 degrees? Well, I'm telling you that that is what Dr. Gilloir testified was necessary. Now, the there are other bases that would have been available to the ALJ had the testimony been different or had the record been different. But what Dr. Gilloir testified to, and of course, we are limited by what the ALJ said, is that that 15 degree measurement isn't present. Now, it's also true that there is a there is a there are two 15 degree measurements. Excuse me, I spoke imprecisely. That's right. There are no 16 degree measurements. And that again, the requirements of the listings are stringent. They are there for a reason. And this medical expert testifies to a specific degree of limitation that he's looking for. I'd note that the listings also require a duration requirement. And that's true of the evidence in of disability in these cases. So it would also be required that the you know, the condition be sufficiently severe for 12 months. But that isn't what the what Dr. Gilloir testified to. So so that's just another factor in the record on this record. But the commissioner's position here, as we've set out in our brief, is that Dr. Gilloir reviewed the record. He testified multiple times to the to his conclusion. And this is a technical aspect of the decision. The ALJ quite reasonably relied on what Dr. Gilloir testified and saying that there isn't evidence of ineffective ambulation. There isn't evidence of flexion contracture that is sufficiently severe to meet this this listing. Now, certainly the ALJ goes on to consider the functional effects of Mr. Loney's knee, her knee impairment. But thank you, Mr. Mervis. Thank you, Mr. Mervis. Your time is expired. Anything further? Just briefly, your honors, I would just I think it's important to hone in on the timeline of the or the tick tock of the of the hearing as it as it went. And so Dr. Gilloir first said no, no equivalence to 102A when initially asked by the ALJ. Then Plaintiff Appellants Council asked about a specific appointment where a doctor said she needed bilateral knee replacements. Dr. Gilloir then stated as of that day, because of the flexion or flexion contracture, she will be medically equaling 102A. At that point, the ALJ jumped in and said, what did you just say to to where we get that's where we get to the flexion contracture part of it. But part of Dr. Gilloir's testimony when initially prompted by counsel was flexion. So that's another aspect of this, an inability to bend the knee as opposed to fully straighten it. And I think there's just ambiguity here. We we don't know what exactly was intended by that that portion of Dr. Gilloir's testimony. What we do know is that he gave specific criteria for flexion contracture of of 15 degrees, and that's in the record. And it just seems to me that the ALJ should have at least be required to confront that in order to for for the court to find that he gave a more than perfunctory evaluation of medical equivalence to 102A. And so I would just ask that the court reverse and remand. Thank you. Thank you, counsel. The case is taken under advisement.